## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**RAHEEM E.,**

    **Plaintiff,**

**v.**

**KILOLO KIJAKAZI,** *Acting Commissioner, Social Security Administration,*[1]

    **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:20-cv-02868-AJB**

## <u>ORDER AND OPINION</u>[2]

Plaintiff Raheem E. brought this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability insurance benefits ("DIB") under the Social

――――――――――――

[1]    Kilolo Kijakazi is now the Acting Commissioner of the Social Security Administration.  Under the Federal Rules of Civil Procedure, Kijakazi "is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  The Clerk is hereby **DIRECTED** to amend the case style to reflect the substitution.

[2]    The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Dkt. Entry dated August 10, 2020).  Therefore, this Order constitutes a final Order of the Court.

Security Act.[3]  For the reasons set forth below, the Court **AFFIRMS** the final decision of the Commissioner.

## I.    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 4, 2013, alleging disability commencing on May 31, 2009.  [Record (hereinafter "R") 216-22].[4]  Plaintiff's applications were denied initially and on reconsideration.  [R109-35, 152-63].  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  [R7-13].  An evidentiary hearing was held on November 12, 2014. [R41-74].  The

---

[3]    Title II of the Social Security Act provides for federal DIB.  42 U.S.C. § 401, *et seq.* Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, provides for supplemental security income ("SSI") for the disabled. Title XVI claims are not tied to the attainment of a particular period of insurance eligibility. *Baxter v. Schweiker*, 538 F. Supp. 343, 350 (N.D. Ga. 1982).  The relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for SSI.  *Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1985).  Title 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.  In general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "Period of Disability," or to recover SSI. However, different statutes and regulations apply to each type of claim.  Many times, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this Opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

[4]    Plaintiff later amended his alleged disability date to March 28, 2011. [R907].

ALJ issued a decision on February 24, 2015, denying Plaintiff's application on the ground that he had not been under a "disability" at any time through the date of the decision.  [R14-40].  Plaintiff sought review by the Appeals Council, and the Appeals Council denied Plaintiff's request for review on June 14, 2016, making the ALJ's decision the final decision of the Commissioner.  [R1-6].

Plaintiff then filed an action in the United States District Court for the Middle District of Florida seeking review of the Commissioner's decision, who reversed and remanded the claim for further proceedings.  [R766-76].  Upon remand, the Appeals Council vacated the decision and remanded the case to the ALJ for further proceedings.  [R779].

A new hearing was held on June 26, 2019.  [R701-32].  The ALJ issued a decision on December 17, 2019, denying Plaintiff's application on the ground that he had not been under a "disability" at any time through the date of the decision. [R652-92].  Plaintiff sought review by the Appeals Council who declined to assume jurisdiction, [R644-47], making the ALJ's decision the final decision of the Commissioner.

Plaintiff then filed an action in this Court on July 9, 2020, seeking review of the Commissioner's decision.  [Doc. 1].  The answer and transcript were filed on December 23, 2020.  [Docs. 12-13].  On January 25, 2021, Plaintiff filed a brief in

support of his petition for review of the Commissioner's decision, [Doc. 15], on February 24, 2021, the Commissioner filed a response in support of the decision, [Doc. 17], and Plaintiff filed a reply brief on March 10, 2021, [Doc. 19]. Neither party requested oral argument. (*See* Dkt.). The matter is now before the Court upon the administrative record, the parties' pleadings, and the parties' briefs, and it is accordingly ripe for review pursuant to 42 U.S.C. § 405(g).

## II.   PLAINTIFF'S CONTENTIONS

As set forth in Plaintiff's brief, the issues to be decided are whether (1) the ALJ's reasons for giving little weight to the opinions of Dr. Quinones, Dr. Welkovich, Dr. Raftery, and Dr. Yaratha were supported by substantial evidence, and (2) the ALJ offered a legally sufficient justification for giving little weight to Plaintiff's VA disability rating. [Doc. 15 at 2].

## III.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must result from anatomical, psychological, or physiological

abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner.  The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).  The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *superseded by* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704 (Dec. 4, 2000),[5] *on other grounds as stated in Washington*

---

[5]     Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the administrative process.  *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330,  338-39  (S.D.N.Y.  2001);  *Tauber  v.  Barnhart*, 438 F. Supp. 2d 1366,  1377  n.6  (N.D.  Ga.  2006)  (Story,  J.)  (citing 20 C.F.R. § 402.35(b)(1)).  Although SSRs do not have the force of law, they are entitled to deference so long as they are consistent with the Social Security Act and

*v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360-61 (11th Cir. 2018). The claimant must prove at step one that he is not undertaking substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments that significantly limits his ability to perform basic work-related activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that his impairment prevents performance of past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether

---

regulations. *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 832 (6th Cir. 2000) ("If a Social Security Ruling presents a reasonable construction of an ambiguous provision of the Act or the agency's regulations, we usually defer to the SSR."); *Minnesota v. Apfel*, 151 F.3d 742, 748 (8th Cir. 1998) ("Social Security Rulings, although entitled to deference, are not binding or conclusive."); *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995); *Gordon v. Shalala*, 55 F.3d 101, 105 (2d Cir. 1995); *Andrade v. Sec'y of Health and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993).

the claimant can perform other work besides past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(v),  416.920(a)(4)(v).   The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform.   *Doughty*, 245 F.3d at 1278 n.2.   To be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists.   *Id*.

If at any step in the sequence a claimant can be found disabled or not disabled, the   sequential   evaluation   ceases   and   further   inquiry   ends. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Despite the shifting of burdens at step five, the overall burden rests on the claimant to prove that he is unable to engage in any substantial gainful activity that exists in the national economy.  *Doughty*, 245 F.3d at 1278 n.2; *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds by* 42 U.S.C. § 423(d)(5), *as recognized in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

## IV.   SCOPE OF JUDICIAL REVIEW

A limited scope of judicial review applies to a denial of Social Security benefits by the Commissioner.   Judicial review of the administrative decision addresses three questions: (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and

(3) whether the findings of fact resolved the crucial issues. *Washington v. Astrue*, 558 F. Supp. 2d 1287, 1296 (N.D. Ga. 2008); *Fields v. Harris*, 498 F. Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). If substantial evidence supports the Commissioner's factual findings and the Commissioner applies the proper legal standards, the Commissioner's findings are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (per curiam); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986) (per curiam); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"Substantial evidence" means "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239. "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence

favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). In contrast, review of the ALJ's application of legal principles is plenary. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

### V.   **STATEMENT OF FACTS**[6]

#### a.  **Background**

Plaintiff was a younger individual, who had completed high school with two years of college and had previously worked as a laser beam machine operator, truck driver, and salesperson.[7] [R45-48, 266, 725-27]. Plaintiff alleges disability due to back sprain, depressive and mood disorder, generalized anxiety disorder, and panic disorder with agoraphobia, personality disorder. [R265, 658].

#### b.  **Lay Testimony**

---

[6]   In general, the records referenced in this section are limited to those deemed by the parties to be relevant to this appeal. [*See* Docs. 15, 17, 19; *see also* Doc. 14 (Sched. Ord.) at 3 ("The issues before the Court are limited to the issues properly raised in the briefs.")].

[7]   There is some dispute regarding Plaintiff's education and work history. The Court discusses these issues below.

At the second hearing, on June 26, 2019, the ALJ noted that Plaintiff's claim had been denied on initial review but that the prior decision was not binding on the ALJ and she would make a new decision based on all the evidence before her. [R703-04].  The ALJ noted that Plaintiff was represented by counsel and placed Plaintiff under oath.  [R705].  Counsel made an opening statement asserting that Plaintiff's primary impairments were psychological in nature.  [R705-06].  Counsel asserted that Plaintiff had a history of depressive disorder, generalized anxiety disorder, and panic disorder with agoraphobia.  [R706].  Counsel pointed to treating source statements indicating that Plaintiff had significant difficulty maintaining concentration, persistence or pace, with reliability, and finding that he would be absent from work several days a month.  [*Id.*].  Counsel noted that Plaintiff's VA rating had been 100 percent since 2011.  [R707].

Plaintiff then testified as follows.  He was divorced and previously worked in the Air Force for six months and received an honorable discharge.  [R707-08].  He had an adult daughter he had raised on his own.  [R708].  While he was living with his mother and daughter, they split cooking and doing chores like laundry, dishes, and cleaning the house.  [R709-10].  He had a girlfriend but had a hard time maintaining relationships.  [R710-11].

10

Plaintiff worked at Macy's part-time in 2005, Arrow Electronic Systems full-time in 2005, and Northrop Grumman full time as a laser optical technician. [R711-12]. While at Northrop Grumman, he did a mix of standing, sitting, and walking, and lifted 10 to 15 pounds for a short time. [R712-13]. He also worked as a truck driver in 2007, a cashier at a cleaning company, at Belk's department store, and full time as a garbage truck driver. [R713-14]. Plaintiff worked at General Electric but was fired because of his attitude. [R714-15]. Plaintiff testified he was fired from each position because of his psychological disorders. [R714]. Plaintiff also worked at another trucking job but it ended within six months. [R715]. He had a commercial driving license but did not use it currently because of the medication from the VA. [*Id.*]. Plaintiff worked at the Air Force Base Exchange for six months but was fired for having too many medical appointments. [R716]. In 2011, Plaintiff sought vocational training to gain new skills but was not able to pick up the new material and ended up dropping out. [R716-17].

Plaintiff testified that he experienced anxiety for multiple hours daily. [R717]. The ALJ noted that Plaintiff looked calm and fine to her and stated she was uncertain as to why he could not work. [R718]. He said he was triggered by having to focus for prolonged periods and by silly things like forgetting to put a new bag in the garbage after taking it out. [*Id.*]. His panic attacks lasted from

11

three days to 20 minutes and caused shortness of breath, sweating, and bowel release.  [R718-19].  His medications did not alleviate his symptoms but did keep him from getting into fights.  [R719].  He was constantly depressed and just wanted to be left alone.  [*Id.*].  He went to group therapy briefly but got into an altercation and did not go back.  [R720].  Plaintiff stated he had both long and short-term memory problems.  [*Id.*].  Little things made him angry and his interaction with the public and co-workers went on a case-by-case basis.  [R720-21].  He had never been hospitalized for mental health issues.  [R721].

Plaintiff testified that concentration was very important to his past positions. [R721-22].  He received a ticket 20 years ago when an undercover agent tried to solicit him for sex.  [R722].  He pled no contest and stated he received somewhere between 60 days and six months' probation.  [R722-23].   His medications kept him from having any other violent offenses.   [R723].   He had difficulty concentrating on both simple and complicated tasks.  [*Id.*].

### c. Medical Records

On March 16, 2011, Plaintiff saw Lantie Quinones, M.D. for anxiety, at the Viera Outpatient Clinic, Department of Veterans Affairs ("Viera").  [R428-29]. Plaintiff reported that he woke up with panic attacks and had generalized worry and anxiety all day long.  [R429].  The notes indicate no prior hospitalizations,

treatment, or suicide attempts.  [*Id.*].  He stated that he had advanced degrees in engineering and criminal justice and had worked numerous jobs but was laid off because of financial issues and was not currently working.  [R430].  A mental status exam indicated that Plaintiff was groomed appropriately, was interpersonally cooperative, had pressured speech, was in an anxious and irritable mood, and had a restricted affect, but his orientation was normal, his memory and concentration were normal, his thought process was linear and goal oriented, and his judgment and insight were good.  [R431-32].  Plaintiff was prescribed Celexa [8] and clonazepam[9].  [R432].

On March 28, 2011, Plaintiff was seen at Viera for an initial visit with his primary care physician, Madhu B. Sarwal, M.D.  [R418].  Plaintiff stated that he started having anxiety before joining the Air Force but never sought treatment.

---

[8]      "Celexa (citalopram) is an antidepressant belonging to a group of drugs called selective serotonin reuptake inhibitors (SSRIs).  Celexa is a prescription medicine used to treat depression.  Celexa is also used to treat major depressive disorder (MDD)," "Celexa," drugs.com, available at: https://www.drugs.com/celexa.html (last accessed Mar. 13, 2022).

[9]      "Clonazepam is used to treat certain seizure disorders (including absence seizures or Lennox-Gastaut syndrome) in adults and children.  Clonazepam is also used to treat panic disorder (including agoraphobia) in adults," "Clonazepam," drugs.com, available at: https://www.drugs.com/clonazepam.html (last accessed at Mar. 13, 2022).

[*Id.*].  He noted a slight improvement since starting medication the week before.

[*Id.*].  His active problems included generalized anxiety, depressive disorder, panic

disorder with agoraphobia, migraines and back pain.  [R420].

On April 6, 2011, Plaintiff was seen at Viera for a psychosocial assessment

after being referred by Dr. Quinones.  [R414].  He said that his medications were

helping him and he was no longer having extreme highs or lows.  [*Id.*].  Plaintiff

was noted to be oriented to person, place, and time, to be cooperative, to have a

euthymic and anxious mood, to have good concentration and memory, and to have

fair insight and judgment.  [R414-15].  He reported that he had been left to raise

his daughter after his wife left him.  [R416].  Plaintiff's reported goal was to

self-manage his feelings of anxiety and depression.  [R417].

On April 25, 2011, Plaintiff was seen by Dr. Quinones for a follow-up

appointment for his depression and anxiety disorders.  [R404].  Plaintiff denied any

pain.  [*Id.*].  He was seen with his mother and sister and they attested that he had

significantly improved mood and anxiety.  [R406].  His mother stated that he still

had periods of anxiety and anger but that he could control them better now.  [*Id.*].

Plaintiff stated that his panic was better controlled but it still kept him from staying

at work.  [*Id.*].  He stated that he was trying to be more active and had an overall

improvement in mood.  [*Id.*].  Plaintiff was noted to be alert, oriented, to have some

14

psychomotor restlessness, to have linear and goal-oriented thought process, and to have an anxious affect but a better mood. [*Id.*].

On May 10, 2011, Plaintiff called the VA and denied difficulty with irritability or impaired concentration. [R402-03]. He stated that his motivation and energy levels had improved and he felt better after starting his medication. [R403].

On May 19, 2011, Dr. Quinones filled out a "Statement in Support of Claim" form for the VA. [R639]. Dr. Quinones opined that Plaintiff suffered from generalized anxiety disorder with panic attacks that negatively impacted various areas of his life. [*Id.*]. She opined that his symptoms impaired his ability to concentrate or function effectively in a work setting. [*Id.*]. She stated that had seen only marginal improvement from medications and therapy and recommended he be considered unable to work. [*Id.*]. On July 18, 2011, Dr. Quinones provided a functionally similar assessment indicating that she was Plaintiff's treating psychiatrist and that he suffered from generalized anxiety and panic disorders that were genetically based and had been present the majority of his adult life. [R638]. She opined that he had extreme difficulty concentrating, organizing his thoughts, and following directions, and he could not work in any functional capacity. [*Id.*].

Dr. Quinones noted that Plaintiff's medications and therapy negatively impacted him due to their side effects.  [*Id.*].

On June 21, 2011, Plaintiff spoke with a social worker at the VA and said he was learning about his depression since taking medications and getting help. [R463].  He stated he was motivated now that he was experiencing symptom relief. [R464].  His mood was noted to be bright, his anxiety moderate, his speech normal, his insight fair, his judgment good, and he was found to be fully oriented.  [*Id.*].

On July 27, 2011, Plaintiff was seen at the VA feeling as though he had a setback and said that he was having daily panic attacks.  [R460].   He said he was afraid all the time and felt like his daily activities were limited due to anxiety and depression.   [*Id.*].   A mental status exam indicated that Plaintiff was alert and oriented, his speech was clear and non-pressured, he had poor eye contact, his thought process was linear and goal oriented, his affect was anxious, and his insight and judgment were grossly intact.  [R460-61].

On June 13, 2012, Plaintiff was seen at the VA reporting spikes in anxiety with panic during the day, violent dreams, and fear of leaving the house.  [R589]. A mental status exam indicated that he was alert and oriented, his speech was clear and non-pressured, his thought process was line and goal oriented, his affect was anxious, and his insight and judgment were grossly intact.  [R590].

16

On August 13, 2012, Plaintiff was seen for a 60-minute outpatient psychological evaluation and presented with anxiety and a depressed mood. [R573-74].  Plaintiff denied panic attacks or excessive worry but reported problems concentrating and interacting with others at times.  [R574].  He reported no prior hospitalizations.  [*Id.*].  Plaintiff indicated he had a high school education and vocational training on the job.  [R576].  Plaintiff appeared appropriately dressed, not restless, his mood was euthymic, his speech was coherent, his concentration and attention were intact, his thought content was logical, and he was oriented as to person, place, and time.  [R576-77].

On August 27, 2012, Plaintiff received a letter indicating that he was being separated from his employment with the Army and Air Force Exchange Service during his probationary period.  [R328].

On October 29, 2012, Plaintiff was seen by Camellia Westwell, Psy. D. for individual psychotherapy sessions and reported his anxiety was controlled, his mood was happier, and he was more relaxed.  [R550].  Plaintiff stated that he felt like his life was under control, he had more energy, and he was realizing his own self-worth.  [*Id.*].  He was noted to be dressed appropriately, to be in good mood, to have an appropriate affect, to have coherent thoughts, intact concentration and

attention, logical thought content, orientation to person, place, and time, to have intact memory, and to have good attention and concentration.  [R550-51].

On November 5, 2012, Plaintiff was seen by Dr. Westwell for individual psychotherapy session and reported no anxiety or depression, felt like his life was finally on track, and felt confident and able to control his anxiety.  [R547].  Plaintiff reported that he did not feel as though he needed to see Dr. Westwell any longer. [*Id.*].   A mental status exam indicated appropriate dress, appropriate affect, productive speech, intact concentration, normal flow of thought, logical thought content, orientation to person, place, and time, and good attention and concentration.  [R548].

On January 3, 2013, Plaintiff was seen at the VA for a follow-up for his anxiety and reported feeling better about his life and enjoying vocational rehabilitation.  [R544-45].  His speech, attention, concentration, and memory were all noted to be normal, he was less irritated, and his judgment was good, insight was fair, and he was oriented to person, place, and time.  [R545-56].  Plaintiff was assigned a Global Assessment of Functioning ("GAF")[10] score of 53.  [R546].

On March 20, 2013, Plaintiff was seen at the VA for medication management

---

[10]     A GAF score "rates an individual's overall level of psychological, social, and occupational functioning." *Volley v. Astrue*, No. 1:07-cv-138-AJB,

and a follow-up for depression and panic attacks after being referred by Dr. Quinones.   [R535].   The notes indicate that Plaintiff was groomed and appropriately dressed, his mood was anxious, his thought content was rational and logical, he was oriented to person, place, and time, and his memory, attention, and concentration were intact.  [R535-36].

Also on March 20, 2013, Dr. Quinones wrote a letter stating that Plaintiff was under her care for severe anxiety and panic attacks and was not able to handle the demands of a vocational rehabilitation program due to severe panic attacks.

---

2008 WL 822192 at *2 n.6 (N.D. Ga. Mar. 24, 2008) (citing *Lozado v. Barnhart*, 331 F. Supp. 2d 325, 330 n.2 (E.D. Pa. 2004) (citing Diagnostic and Statistical Manual of Mental Disorders (4th Ed.)). The GAF ranges

> from 0 to 100 and is divided into 10 ranges of functioning, requiring the examiner to pick a value that best reflects the individual's overall level of functioning using either symptom severity or functioning. . . . Each range can be described as follows: . . .; a GAF score of in the range of 41-50 indicates "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)"; a GAF score in the range of 51-60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or coworkers) . . . ."

*Id.* (quoting *Lozado* , 331 F. Supp. 2d at 330 n.2).  However, the SSA has declined to endorse GAF scores for use in Social Security programs, and so courts have assigned them little weight.   *Vanhorn v. Kijakazi*, No. 8:20-CV-728-JRK, 2021 WL 4059905, at *6 n.11 (M.D. Fla. Sept. 7, 2021) (citations omitted).

[R637].

On May 8, 2013, Plaintiff was seen for a follow-up for his anxiety and complained that he could not tolerate his rehabilitation program. [R527-28]. Since leaving rehabilitation his panic had subsided but he was socially isolated. [R528]. A mental status exam indicated that he was interpersonally cooperative, his mood was anxious, his affect was restricted, his concentration, memory, and thought process were normal, his judgment was good, and his insight was fair. [R529]. Plaintiff was assigned a GAF score of 53. [*Id.*].

On May 13, 2013, Roger Raftery, Ph.D., a VA psychologist, completed a disability benefits questionnaire on behalf of Plaintiff. [R490-91]. Dr. Raftery found that Plaintiff had been diagnosed with mental disorders, including mood and anxiety disorders. [R492]. He assigned Plaintiff a GAF score of 50. [R492-93]. He noted that Plaintiff had occupational and social impairments with deficiencies in most areas, including work, school, and family. [R494]. The notes indicate that Plaintiff completed high school but apparently unsuccessfully attended technical school and community college. [R495-96]. Dr. Raftery diagnosed Plaintiff with depressed mood and anxiety, illogical speech, disturbances in mood, and difficulty in establishing and maintaining effective relationships. [R496-97]. Dr. Raftery concluded that the results of his testing appeared valid even though Plaintiff was

likely reporting more problems than actually existed. [R498]. Plaintiff was described as being depressed and preoccupied with his bowel functions. [*Id.*]. He was noted to live with and be quite dependent on his mother and also to be a questionable historian. [*Id.*].

On June 4, 2013, Plaintiff was awarded a 70% disability evaluation by the VA. [R257]. On June 29, 2019, Plaintiff's disability rating was raised to 100%. [R1078-80]. He was later honorably discharged with a 100% disability rating. [R261].

On July 31, 2013, Plaintiff was seen for anxiety follow-up at the VA and stated that he could not do vocational rehabilitation. [R621]. He further stated that he was more irritable than usual, he was short tempered, distracted, had poor short-term memory, and was not sleeping well. [*Id.*]. He was noted to be dressed appropriately, to be interpersonally cooperative, moody, to have a restricted affect, normal concentration and memory, linear thought process, good judgment, and fair insight. [R622]. Plaintiff was assigned a GAF score of 51. [R623].

On August 26, 2013, Plaintiff was seen by Dr. Westwell and the notes indicate that he had not been seen since 2012. [R616-17]. Plaintiff requested continued therapy due to increased stress, anxiety, and depressive symptoms. [R617]. He reported excessive worry, headaches and gastrointestinal issues,

21

ruminating, and noted that some days he was unable to fulfill his schedule due to his mood. [*Id.*]. Plaintiff reported that he had to drop out of vocational rehabilitation due to anxiety. [*Id.*]. Plaintiff was noted to be motivated with regard to treatment. [R618]. Plaintiff was described as not being restless, to have an appropriate mood, coherent speech, distracted concentration and attention, logical content of thought, to be oriented to person, place, and time, to have an adequate fund of knowledge, insight, and non-impaired judgment. [*Id.*].

On March 13, 2014, Dr. Quinones wrote a letter indicating that Plaintiff was under her care for severe anxiety disorder and panic attacks and that he still struggled with day-to-day life. [R636]. She further opined that he had trouble focusing and concentrating, was forgetful, and misplaced things easily. [*Id.*]. She noted that his treating medications made him sedated or drowsy and that it was her opinion that it would be very difficult for him to participate safely in a work setting due to his illness. [*Id.*].

On March 18, 2014, a report on Plaintiff's earnings was run indicating that he previously worked at Northrop Grumman and General Electric. [R237, 239].

In a mental impairment questionnaire completed by Dr. Quinones on April 2, 2014, she stated that she had been Plaintiff every three months for three years and that he had a partial response to medications and therapy. [R640]. Dr. Quinones

noted that the patient had intermittent panic attacks characterized by sweat and dizziness and also had associated agoraphobia and short-term memory problems. [*Id.*].   She found that Plaintiff had extreme difficulty in maintaining social functioning and marked difficulties in concentration, persistence, or pace.  [R642]. Dr. Quinones opined that Plaintiff would miss more than four days of work a month due to his impairments, his impairments could be expected to last more than a year, and that his severe anxiety was only partially controlled and he had a limited response to medication and therapy.  [R643].

On November 13, 2014, Plaintiff was seen by Dr. Welkovich at the VA for refills of his medication.  [R1046].  He stated that he was still having panic attacks but they were much less frequent and only occurred when something stressful was going on or he was surrounded by company.  [*Id.*].  He indicated he did not want to change his medication.  [*Id.*].  Plaintiff stated he had completed four years of college, was a graduate of the police academy, his last job was as an engineer for General Electric, but that he could not work now because of his symptoms. [R1047].  His mood was described as very anxious, his affect was full range, his speech was fluent, his thought process was linear and goal-directed, his insight and judgment were intact, and his memory was grossly intact.  [R1050].

On February 13, 2015, Plaintiff was seen at the VA for treatment for his generalized anxiety, panic disorder, and unspecified depressive disorder. [R1037]. He generally denied side effects from his medication, and stated that, lately, he was more irritable and angrier. [*Id.*]. He said he had never attempted suicide and his life and improved greatly since meeting Dr. Quinones. [R1038]. A mental status exam indicated that Plaintiff was alert and oriented, his affect was full range, his speech was fluent and had a normal rate, his thought process was linear and goal-directed, and his insight and judgment were intact. [R1041].

On March 20, 2015, Plaintiff was seen by Dr. Welkovich for a follow-up appointment and stated that his ability to focus had lessened but his panic attacks and overwhelming anxiety had decreased. [R1029]. Plaintiff was noted to be cooperative, depressed, to have an anxious affect, to have fluent speech and linear thought process, and to have intact insight, judgment, and memory. [R1032-33].

On April 9, 2015, Plaintiff was seen by Dr. Welkovich for a follow-up appointment and was noted to have been diagnosed with anxiety, panic disorder, and an unspecific depressive disorder. [R1021-22]. He reported an increase in depression but stated he did not want to see a peer specialist or therapist and only wanted to continue with medication management appointments. [R1022]. He was noted to be cooperative, to have a depressed mood and constricted affect, to have

fluent speech and linear thought process, intact insight and judgment, and grossly intact memory. [R1025].

On May 14, 2015, Plaintiff was seen by Dr. Welkovich for a follow-up and reported that his symptoms had increased over the years. [R1014]. He stated that he had at least one panic attack a day. [*Id.*]. During panic attacks, he got sweaty, dizzy, and short of breath. [R1015]. A mental status exam indicated that Plaintiff was cooperative, his mood was anxious, he was depressed and irritable but less than last appointment, his affect was full range, his speech was fluent, his thought process was linear, and his insight and judgment were intact. [R1018].

On November 10, 2015, Dr. Welkovich wrote a letter regarding Plaintiff, stating that he had a service-connected panic disorder and a history of severe anxiety and panic attacks. [R945]. Dr. Welkovich noted that Plaintiff had trouble focusing and concentrating and that his attention span was short. [*Id.*]. She noted that he was frequently home-bound due to untriggered panic attacks and that his medication left him sedated and drowsy. [*Id.*]. She opined that it would be very difficult for him to participate in a work setting due to his illness and symptoms. [*Id.*].

On October 18, 2019, the ALJ requested that Dr. Sridhar Yaratha complete certain interrogatories based on the evidence in the record and his professional

knowledge.  [R1197].  Dr. Yaratha thereafter completed a form titled "Medical Statement of Ability to do Work-Related Activities (Mental)" indicating that Plaintiff had moderate limitations in his ability to make judgments on simple work-related decision and marked limitations in his ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions.  [R1198].  Dr. Yaratha also found that Plaintiff had marked limitations in his ability to interact appropriately with the public and supervisors, a moderate limitation in his ability to interact appropriately with co-workers, and a marked limitation in responding to usual work situations. [R1199].

Dr. Yaratha also completed a document titled "Medical Interrogatory – Mental Impairment – Adult."  [R1202].  He opined that there was sufficient evidence for him to opine regarding the nature and severity of Plaintiff's impairments and, based on that evidence, that Plaintiff had marked limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself.  [R1203].  Dr. Yaratha further opined that Plaintiff's impairments met Listing 12.04, Depressive, bipolar and relate disorders, and 12.06, anxiety and obsessive-compulsive disorders.  [R1204].  He further opined that the evidence indicated that Plaintiff suffered from anxiety and depression and they

26

inhibited him from adapting appropriately, and so he satisfied the "Paragraph C" criteria. [R1205].

### d. Vocational-Expert Testimony

At the hearing before the ALJ, the ALJ asked the Vocational-Expert ("VE") to identify Plaintiff's past work, which the VE stated included work as a laser beam operator, truck driver, garbage collector. [R725-27]. The ALJ asked the VE to assume a hypothetical with someone of the same age, education, and work experience, who was capable of performing the full range of light work with the additional limitations: only occasionally climbing ramps and stairs, never ladders, ropes, scaffolds, who could occasionally balance, stoop, and crawl, could have occasional exposure to hazards, could understand, remember, and carry out simple instructions, could concentrate and persist to complete simple, routine, and repetitive tasks at a consistent pace but not a production-rate pace, could tolerate occasional interaction with supervisors, co-workers, and the public, and could adjust to gradual changes in a routine work setting. [R727-28]. Based on this hypothetical, the VE concluded that such an individual could not perform any past

work but could perform other work in the national economy, including as a garment sorter, table worker, and machine tender.  [R728].

The VE testified that the most time an individual could be off-task was 10 percent of the workday or more than one day per month after a 90-day probation period.  [R729-30].   Upon questioning from Plaintiff's counsel, the VE testified that time off-task requiring hourly re-direction that would continue over time would prevent an individual from sustaining competitive employment.  [R730].  The VE further testified that an individual would not be able to sustain competitive employment if unable to interact appropriately with a supervisor or respond to criticism.  [R730-31].

## VI.   ALJ'S FINDINGS

The ALJ made the following findings of fact and conclusions of law:

> 1.    The claimant last met the insured status requirement of the Social Security Act on June 30, 2015.
>
> 2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 28, 2011 through his date last insured of June 30, 2015 . . . .
>
> . . .
>
> 3.    Through the date last insured, the claimant had the following combination of severe impairments: back strain, depressive and mood disorder, generalized anxiety disorder, panic disorder with agoraphobia, and personality disorder . . . .

28

. . .

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments  . . . .

. . .

5.      After careful consideration of the entire record, [the ALJ found] that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) in that he can lift and/or carry up to 20 pounds occasionally, 10 pounds frequently.  He can sit for up to 6 hours in an 8-hour day and stand and/or walk for up to 6 hours in an 8-hour day. He can occasionally climb ramps and stairs but never ropes, ladders, or scaffolds.  He can occasionally balance; stoop, crawl, and can have occasional exposure to work hazards.  He can understand, remember, and carry out simple instructions and can concentrate and persist to complete simple, routine, and repetitive tasks at a consistent pace but cannot work at a production rate pace where each task must be performed within a strict time deadline.  He can occasionally interact with supervisors, coworkers and the public and can adjust to gradual changes in a routine work setting.

6.      Through the date last insured, the claimant was unable to perform any past relevant work . . . .

7.      The claimant was born on April 6, 1972 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured.

8.      The claimant has at least a high school education and is able to communicate in English . . . .

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills . . . .

> 10.   Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed . . . .
>
> . . .
>
> 11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 8, 2011, the alleged onset date, through June 30, 2015, the date last insured . . . .

[R657-92].

The ALJ noted that the case had been remanded from the Appeals Council after being remanded from the United States District Court for the Middle District of Florida. [R655]. The ALJ recounted that subsequent to the hearing a medical expert interrogatory was requested and received, but no request for a supplemental hearing was made. [*Id.*]. The ALJ observed that whether Plaintiff had met the insured status requirements of the SSA was an issue, but his earnings record showed that he had acquired sufficient quarters of coverage to remain insured through June 30, 2015. [R656]. The ALJ noted that Plaintiff had worked after the alleged onset disability date but the work activity did not rise to the level of substantial gainful activity. [R657-58].

The ALJ found that, through the date last insured, Plaintiff had the following severe impairments: back strain, depressive and mood disorder, generalized anxiety

30

disorder, panic disorder with agoraphobia, and personality disorder. [R658]. The ALJ also found Plaintiff to have non-severe headaches, gastroesophageal reflux disease, and obesity. [*Id.*]. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*id.*]. The ALJ specifically found that Plaintiff did not meet Listings 1.02, 1.04, 12.04, 12.06, or 1208. [R658-59].

In understanding, remembering, or applying information, the ALJ found a moderate limitation. [R659]. The ALJ noted that Plaintiff gave inconsistent reports about his education and qualifications. [R659 n.1]. In interacting with others, the ALJ found a moderate limitation and noted that Plaintiff had a close relationship with his daughter and reported having friends off and on throughout his life. [R659-70]. The ALJ found a moderate limitation in concentrating, persisting, or maintaining pace, and noted that although Plaintiff alleged significant problems with concentration at the hearing and sometimes to his mental health providers, the vast majority of his mental status exams reflected no impairment of memory and normal concentration and attention. [R660]. Finally, the Court found a moderate limitation with regard to adapting or managing oneself and noted no evidence of acute interventions or emergency treatment for acute psychiatric symptoms and that, even off his medications, Plaintiff presented with normal mood and affect.

31

[R660-61].    Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.  [R661].  The ALJ further found that the "paragraph C" criteria were not satisfied.  [*Id.*].

In crafting the RFC, the ALJ noted that she considered all symptoms and the extent to which they could reasonably be accepted as consistent with the evidence and also considered the opinion evidence.  [R662].  The ALJ concluded that Plaintiff's medically determinable impairments could be expected to cause the alleged symptoms but his statements about their intensity, persistence, and limiting effects was not entirely consistent with the medical evidence.  [*Id.*].  The ALJ recounted the hearing testimony and the assertion by Plaintiff's counsel that his impairments were primarily psychological.  [R662-65].  The ALJ noted that, when she mentioned how calm and responsive he appeared, unlike someone suffering from severe anxiety multiple hours a day, and further noted that this demeanor appeared calm, he thanked her and did not offer any explanation for the disparity between his demeanor and his assertions.  [R664].

With regard to the medical record, the ALJ observed that Plaintiff called into his mental health clinic in May 2011 and reported compliance with his medications and denied impaired concentration.  [R665].  He also admitted overall improvement

in anxiety since starting medication and to having no issues with concentration, which the ALJ found to be an indicator that he did not have concentration or memory problems when he applied for disability.  [*Id.*].  The ALJ noted that Plaintiff saw Dr. Quinones in March 2011 and reported a history of anxiety without treatment that allegedly worsened after joining the military.  [*Id.*].

The ALJ observed that Plaintiff had testified that all of his jobs ended due to anxiety but informed the VA that some had ended for other reasons.  [R666].  The ALJ also observed that Plaintiff changed his educational history from having a Master's degree in "electro engineering" and an advanced engineering degree to a high school education with job training.  [R666 n.5].  The ALJ noted that when Plaintiff saw Dr. Quinones in April 2011 he admitted to improving significantly in mood and anxiety.  [R666].  The ALJ also pointed out that, at the same time, he visited his primary care doctor and reported that migraines were not an issue for him.  [*Id.*].

The ALJ noted that records in May 2011 showed an improvement in Plaintiff's mood and anxiety within six weeks of starting psychotropic medications, but he still filed a disability claim on May 23, 2011.  [R667].  The ALJ recounted that Dr. Quinones wrote a two-page statement asserting that Plaintiff's disability significantly impacted his ability to work even though she had only seen him a

33

handful of times at that point.  [*Id.*].  The ALJ also noted that just nine days before the date Dr. Quinones wrote her statement Plaintiff informed a VA social worker that, while he still felt anxiety, he denied having difficulty with irritability or impaired concentration.  [*Id.*].  The ALJ observed that there were few notes from the mental health clinic and social worker in June and July 2011.  [R668].

The ALJ considered a lengthy gap in Plaintiff's mental health records and visits to the VA clinic between July 2011 and June 2012 and that during this period there were no crisis interventions, emergency room visits, or evidence of decompensation.  [*Id.*].  The ALJ noted that Plaintiff saw a nurse practitioner in June 2012 and alleged spikes in his anxiety but his medication was adjusted and, in July, he admitted his mood was a little better.  [R668-69].  The ALJ related that, at a therapy session with Dr. Westwell, Plaintiff alleged disabling anxiety symptoms but contemporaneous medical records from September 2012 indicated that he was depressed at times but not hopeless and had an active lifestyle.  [R669]. The ALJ further noted that the therapy notes did not indicate that Plaintiff had disclosed that he was working part-time for the last six months.  [*Id.*].  The ALJ also pointed out that Dr. Westwell's notes in August 2012 show a mental status exam within normal limits.  [*Id.*].

In November 2012, Plaintiff admitted to being happier, more relaxed, and denied current anxiety or depression. [R670]. In March 2013, Plaintiff claimed he was having panic attacks and his medication was ineffective, but when he saw a mental health provider his mental status exam was stable. [*Id.*]. He also reported stopping one of his medications and disliking his medications generally. [*Id.*]. The ALJ noted that in May 2013 he told Dr. Quinones that he was unable to tolerate the vocational rehabilitation program due to daily panic with sweats, diarrhea, and palpitation but that this coincided with him undergoing pension and compensation exams with the VA. [*Id.*]. While those were pending, Plaintiff went to the emergency room to refill his medications but had no complaints at the time. [R670-71].

The ALJ noted that records from May 2013 did not suggest that even off medication Plaintiff was experiencing the debilitating symptoms he reported to mental health providers at the VA. [R671]. She noted that Dr. Raftery documented Plaintiff's mood and anxiety disorders as impairing his ability to work but also noted that Plaintiff was found to be questionable historian of his condition. [*Id.*]. The ALJ noted that in July 2013 Plaintiff admitted he had been doing yard work but earlier had indicated in a function report that he could not do such work because it would force him to be confronted by neighbors. [*Id.*]. He was described as being

35

cooperative and friendly with no mood abnormalities. [R672]. The ALJ noted a gap in Plaintiff's treatment of about a year from August 2013 to November 2014. [*Id.*]. There were no emergency visits or hospitalizations and, when Plaintiff did seek intervention, it was for a medication refill. [*Id.*]. At that appointment, he admitted that this panic attacks were far less frequent and his medications were helpful. [*Id.*]. His thought process, memory, judgment, and speech were within normal limits. [R673]. The ALJ noted that Plaintiff returned to the VA clinic in February 2015 and reported some mood symptoms but by May 2015 reported improvement in mood. [*Id.*].

The ALJ found that Plaintiff's report about his symptoms varied considerably throughout the record, with him sometimes alleging only a few panic attacks a week and elsewhere claiming they occurred daily. [*Id.*]. The ALJ noted that Plaintiff did appear to have a depressive and anxiety disorder requiring treatment but his treatment generally consisted of routine medication management visits to the VA and some outpatient therapy. [*Id.*]. The ALJ also noted that Plaintiff's mental status exams generally revealed his concentration and memory to be normal despite his allegations that they were poor due to his anxiety/panic disorder. [R674]. The ALJ noted that at the hearing Plaintiff's demeanor was generally calm and that his psychiatrists repeatedly found a GAF score of above

36

50.  [R674, 674 n.7].  The ALJ further noted that evidence in the record indicated that Plaintiff's medications were effective.  [R674-75].

The ALJ found GAF scores by themselves had little evidentiary value. [R675].  She noted that Plaintiff reported that he could not keep a job for long due to his attitude and panic/anxiety disorder but found that assertion was not entirely supported by the record.  [R675-76].  The ALJ noted that Plaintiff reported to the VA in an initial psychiatric evaluation that he was laid off for financial issues. [R676].  The ALJ noted discrepancies in Plaintiff's statements about his educational background.  [*Id.*].  The ALJ asserted that Plaintiff gave inconsistent reports about his education and qualifications to be performing some of the jobs he claimed to have held.  [*Id.*].  The ALJ further noted that, although Plaintiff claimed his supervisor terminated him from his part-time job because he needed too much time off to get medical treatment, the termination letter was not specific and he never reported the position at the mental health clinic.  [R676].  The ALJ noted that Plaintiff described his daily activities as fairly limited but that some of the activities were not subject to verification.  [R676-77].  The ALJ further found that Plaintiff did not always disclose all his activities, just as he did not disclose his part-time work to his VA treating psychiatrist. [R677].  The ALJ noted that Plaintiff's reports about his symptoms varied so much as to appear implausible and inconsistent with

37

the record.  [*Id.*].

The ALJ then reviewed the opinion evidence and gave Dr. Lionel Henry's opinion significant weight because it was supported by the VA notes.  [R677-79]. The ALJ also gave great weight to the opinions of the state agency consultants, Dr. Hightower and Dr. Dennard, which were very similar in describing Plaintiff's RFC, because they were supported by the record and consistent with the other substantial evidence of record.  [R679-80].

With regard to Dr. Quinones, the ALJ gave little weight to her opinions in May and July 2011 because she had only seen Plaintiff a handful of times at that point and she appeared to rely heavily and uncritically on Plaintiff's statement of his past and current condition.  [R680].  The ALJ noted that the opinion was unsupported by Dr. Quinones's own treatment notes and other substantial evidence of record and noted, among other things, that in May 2011 Plaintiff told a VA social worker over the phone that he had less mood irritability with medication and denied impaired concentration.  [R681].  The ALJ further found that there was nothing in the notes through July 18, 2011, supporting her opinion about Plaintiff's ability to work due to extreme limitations in concentration and cognitive function.  [*Id.*].

The ALJ also gave little weight to Dr. Quinones' opinion in March 2013 that Plaintiff was unable to handle the demands of a vocational rehabilitation program

due to severe panic attacks.   [R681-82].   The ALJ found these statements conclusory and noted that, five months prior, Plaintiff had a normal mental status exam and denied problems or complaints.  [R682].  The ALJ also noted there was no evidence that Dr. Quinones saw Plaintiff for evaluation when she wrote the statements for him.  [*Id.*].  The ALJ further noted that when Plaintiff was seen in the emergency room in May 2013 for a medication refill he had reported no complaints.  [*Id.*].  The ALJ found that Dr. Quinones's March 2013 opinion was not based on direct observation and instead was based on Plaintiff's own uncorroborated reports.  [*Id.*].

In April 2014, Dr. Quinones provided Plaintiff with a mental impairment questionnaire and the ALJ noted that, although she stated she saw him every three months for three years, their actual contact was more sporadic.  [R682-83].  The ALJ pointed to some apparent errors in Dr. Quinones's own GAF scores and those of other providers.  [R683].  The ALJ also noted that, although Dr. Quinones opined regarding Plaintiff's response to medication, there was no evidence in the record of oversedation or drowsiness.  [*Id.*].  The ALJ found that Dr. Quinones again relied upon Plaintiff's reports and did not actually cite clinical findings or mental exams. [*Id.*].  The ALJ gave the opinion little weight and observed that Dr. Quinones gave Plaintiff some GAF scores of 50 at the beginning of treatment but subsequently

moved them into the moderate range.  [R684].

The ALJ also found that Dr. Westwell saw Plaintiff for multiple visits during the relevant period and the majority of his mental status exams reflected anxiety but also a better control of symptoms.  [*Id.*].  The ALJ noted that Dr. Westwell also found GAF scores in the upper 50s for most of Plaintiff's visits, which tended to indicate the presence of residual symptoms that were not marked or extreme and so were not consistent with Dr. Quinones's opinion.  [*Id.*].  The ALJ further found that Dr. Quinones apparently formed an opinion in May 2011 that she never changed despite inconsistencies and omissions by Plaintiff about material matters. [R685].

The ALJ noted that Dr. Welkovich gave an opinion in November 2015 that essentially mirrored Dr. Quinones's opinion.  [*Id.*].  The ALJ gave the opinion little weight, however, because she found it was unsupported by Dr. Welkovich's notes and clinical findings on exam and there was no evidence during the time she treated him that he suffered from deficits in concentration, memory, or focus.  [*Id.*].  The ALJ noted that in mental status exams with Dr. Welkovich, Plaintiff's behavior was appropriate and cooperative, there was no indication of him losing his train of thought, and there were no signs of paranoia.  [R686].  While Plaintiff did report to her that he was unable to work due to anxiety, his mental status exams through his

date last insured did not show any deficits and her exams did not support the extreme impairment about which she opined. [*Id.*]. The ALJ therefore found her opinion to be unsupported and noted that she relied uncritically upon Plaintiff's own self-reported limitations. [*Id.*].

The ALJ stated that she had requested a medical expert review of Plaintiff's file for hearing and that Dr. Yaratha opined that Plaintiff met listings 12.04 and 12.06, but her narrative analysis was no more than two sentences and that as to several of the exhibits she cited, the ALJ had already assigned little weight. [R686-87]. The ALJ also found that Dr. Yaratha cited to several of pages from after Plaintiff's last date insured and she otherwise cited only to Plaintiff's subjective complaints. [*Id.*]. The ALJ noted that objective findings from the same period revealed intact speech, thought, attention, concentration, and memory. [R687-88]. The ALJ found no effort to evaluate Plaintiff's mental functioning based on the record as a cohesive whole and so gave the opinion little weight. [R688].

Finally, the ALJ noted an opinion from Dr. Raftery, who reviewed Plaintiff's treatment record and conducted one mental status exam. [*Id.*]. The ALJ gave the opinion limited weight because his objective findings were circumstantial and Dr. Raftery acknowledged that Plaintiff was a questionable historian and was likely reporting more problems than existed. [*Id.*]. The ALJ noted that in Plaintiff's

interview with Dr. Raftery, he claimed to be a high school graduate with some community college and six months in the Army while elsewhere he reported having an advanced engineering degree and a master's degree.  [R688-89].  Dr. Raftery still found Plaintiff to be occupationally impaired, but the ALJ gave the opinion limited weight because it was based on one exam and Plaintiff's self-reported and uncorroborated history about his education and jobs.  [R689].

The ALJ recounted that the VA issued a 100% unemployment rating to Plaintiff but stated that she was required to consider all the underlying medical evidence when assessing a VA disability rating.  [*Id.*].  She also noted that she had evaluated the medical opinions of the VA treating sources and found them to lack supportability and consistency.  [*Id.*].  The ALJ also noted that the VA system was different in terms of the meaning of a disability percentage and so gave the rating limited weight.  [R689-90].  The ALJ therefore found that the RFC was supported by consideration of the medical evidence of record, the opinion evidence, and other factors in accordance with the Social Security regulations.  [R690].

Relying on the testimony of the VE, the ALJ found that Plaintiff could not perform his past relevant work.  [R691].  Again relying on the VE testimony, the ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, such as a garment sorter, table worker, and machine tender.

[R692].   The ALJ therefore found that Plaintiff had not been disabled between the application for a period of disability and the last date insured.  [*Id.*].

## VII.  CLAIMS OF ERROR

Plaintiff argues that the ALJ did not sufficiently evaluate the medical opinions in the record.  [Doc. 15 at 10].  With regard to Dr. Quinones's opinion, Plaintiff contends that the ALJ wrongly concluded that the opinion was unsupported by the psychiatrist's own treatment notes and other evidence in the record because the treatment notes showed that Plaintiff had significant mental status abnormalities.  [*Id.* at 11-12].  He argues that he has had persistent anxiety despite medication, making it reasonable for Dr. Quinones's to find that he had an extreme limitation in social functioning and a marked limitation in concentration. [*Id.* at 12].  He submits that a patient with chronic mental health impairment is likely to have good and bad days and the ALJ erred by focusing on Plaintiff's occasional reports of improved symptoms instead of the record as a whole.  [*Id.*]. Plaintiff argues that Dr. Westwell's notes did not contradict Dr. Quinones's opinion and that the ALJ failed to acknowledge the abnormal mental status findings Dr. Westwell made in Plaintiff's most recent appointment.  [*Id*. at 12-13].

Next, Plaintiff argues that the record does not support a finding that he misled his doctors.  [*Id.* at 13].  He asserts that the ALJ faulted him for not

43

disclosing that he found a part-time job, but the record does not indicate that he lied to Dr. Quinones or other doctors, and they may just have never asked him about it. [*Id.* at 13-14].   He contends that, in any event, he was terminated during the probation period due to his need to obtain mental health treatment, which corroborates Dr. Quinones's findings.  [*Id.* at 14].  He notes the ALJ's finding that Dr. Quinones's incorrectly stated that Plaintiff's highest GAF over the last year was 50 when the doctor had assigned him scores of 51 to 53, but argues the difference is immaterial.  [*Id.*].  He contends that, in any event, the score itself does not indicate that he had any greater functional limitation than Dr. Quinones suggested.  [*Id.* at 15].

With regard to Dr. Welkovich, Plaintiff disagrees with the ALJ's finding that his mental status examinations did not support the functional limitations described because the notes show that he suffered from a relatively high level of anxiety.  [*Id.* at 16].  He asserts that he told Dr. Welkovich that he had at least one panic attack a day and contends that this and other evidence supports Dr. Welkovich's finding that he had difficulty leaving home due to anxiety and would not be able to participate in an employment setting.  [*Id.* at 16-17].  He additionally argues that the ALJ also found Dr. Welkovich's opinion unpersuasive because Plaintiff did not tell him about a part-time job, but that argument is unconvincing for the same

reasons given above.  [*Id.* at 17].  He further argues that his inability to keep the job for any significant period corroborates Dr. Welkovich's finding that it would be difficult for him to adjust to the demands of a work environment.  [*Id.*].

With regard to Dr. Raftery's opinion, Plaintiff asserts that the reasons given by the ALJ for discounting the opinion, such as the fact that Dr. Raftery only examined him once, are unpersuasive because his opinion was consistent with Dr. Quinones's and Dr. Welkovich's opinions and no other treating source suggested fewer limitations than Dr. Raftery described.  [*Id.* at 18-19].  He disputes the ALJ's assertion that he did not accurately describe his education and employment and claims he previously gave similar testimony.  [*Id.* at 19].  He further disputes the ALJ's assertion that, during an initial evaluation, he claimed to have an advanced engineering degree and/or a master's degree and claims that Dr. Quinones confused his technical diploma with an advanced college degree.  [*Id.* at 19-20].  He argues that the ALJ's finding that there was some question as to whether he had worked at, and had the qualifications to work at, General Electric and Northrop Grumman was meritless, as the record showed he had worked at both and had technical training while in the Air Force.  [*Id.* at 19-20].  Plaintiff notes that Dr. Raftery found that his psychological profile was valid even though he was a questionable historian of his condition.  [*Id.* at 20-21].

45

Finally, Plaintiff argues that the ALJ erred by giving little weight to the opinion of Dr. Yaratha on the basis that Dr. Yaratha only considered his subjective complaints and argued that Dr. Yaratha's treatment notes contained abnormal findings.  [*Id.* at 21].  He contends that the fact that Dr. Yaratha only cited to the first page of the treatment notes, where his subjective complaints were listed, does not mean she failed to consider all the other pages.  [*Id.* at 22].  He further disagrees with the ALJ's statement that Dr. Yaratha failed to provide a sufficient supporting explanation and argues that the ALJ could have contacted the doctor for further information if she was unable to ascertain the basis for the medical findings.  [*Id.* at 22-23].

In his second claim of error, Plaintiff argues that the ALJ did not give a sufficient justification for rejecting his 100% disability rating.  [*Id.* at 23-24].  Although the ALJ found the VA opinion was not entitled to weight because it was based on the opinions discussed above, Plaintiff argues that he has shown that was error.  [*Id.* at 24].  He also notes that the ALJ found the VA's findings unpersuasive because they do not apply the same rules and standards as the SSA, but argues that a VA rating may not be rejected solely on those grounds.  [*Id.* at 24-25].

In response, the Commissioner argues that substantial evidence supports the weight given to the various medical source opinions.  [Doc. 17 at 6].  The

Commissioner notes that Dr. Quinones offered several opinions and the ALJ properly gave little weight to the May and July 2011 opinions because they were unsupported by the psychiatrist's own treatment notes and other evidence in the record. [*Id.* at 9-10]. The Commissioner notes that the ALJ pointed to evidence indicating that Dr. Quinones started Plaintiff on medication in March 2011 and by April 2011 he reported that it was helping and that his concentration and memory were good. [*Id.* at 10]. The ALJ also noted that in May 2011, Plaintiff reported less mood irritability to his VA social worker and, in June 2011, his mood was bright and there was no indication of significant concentration or memory problems, which was the last note prior to Dr. Quinones's July 2011 opinion. [*Id.* at 10-11].

The Commissioner contends that Dr. Quinones's March 2013 opinion was also properly discounted because Plaintiff was seen in November 2012 at the VA clinic and his mental status exam was normal and he denied problems or complaints. [*Id.* at 11-12]. In January 2013, Plaintiff saw Dr. Quinones and reported he was in vocational rehabilitation, denied medication side effects, and stated his mood was better and he was less irritable. [*Id.* at 12]. In March 2013, Plaintiff saw a pharmacologist who noted a normal mental status exam. [*Id.*]. The Commissioner argues that these treatment notes provided good reason for the ALJ to discount Dr. Quinones's opinion. [*Id.*].

The Commissioner contends that the ALJ also had good reason to discount Dr. Quinones's March and April 2014 opinions because they conflicted with preceding treatment notes reflecting better control of symptoms, normal status findings, and generally good mood.  [*Id.* at 12-13].  The ALJ found that these examinations showed functioning that was good and stable, despite residual symptoms, and the Commissioner argues that finding is supported by substantial evidence.  [*Id.* at 13].

With regard to Dr. Welkovich, the Commissioner notes that her November 2015 statement basically mirrored Dr. Quinones's March 2014 statement.  [*Id.*].  The ALJ found the opinion was unsupported by her notes and objective findings on exam and noted that Dr. Welkovich did not find deficits in memory, concentration, or focus, did not observe Plaintiff having a panic attack or other evidence of marked to extreme impairment due to anxiety/depression, and so her exams did not support the extreme impairment she found.  [*Id.* at 14].

With regard to Dr. Raftery, the Commissioner notes the ALJ's finding that he was not a treating mental health provider and that he conducted one mental status exam.  [*Id.*].  The ALJ gave the opinion limited weight because Dr. Raftery admitted that Plaintiff was a questionable historian and was likely reporting more problems than existed.  [*Id.* at 15].  The ALJ also noted that Plaintiff had mental

48

status exams around the time of this exam that were unremarkable and the Commissioner argues that the ALJ's weighing of Dr. Raftery's opinion was therefore consistent with SSA regulations and relevant caselaw. [*Id.*].

As to Dr. Yaratha, the Commissioner argues that she effectively found that Plaintiff was disabled because she met two listings: 12.04 and 12.06. [*Id.* at 15-16]. The Commissioner notes that the ALJ gave the opinion little weight because it relied upon exhibits that the ALJ had discounted and cited to material after Plaintiff's date last insured. [*Id.* at 16]. Of the remaining records, the Commissioner notes the ALJ's finding that Dr. Yaratha cited to only six pages to support her opinion and one page simply reflected his history of anxiety and panic attacks. [*Id.* at 16-17]. The Commissioner notes that Dr. Yaratha relied on one page of a document where Plaintiff stated he could not do rehabilitation, but ignored another page where his mental status exam reflected normal memory and concentration and good judgment. [*Id.* at 17]. The Commissioner argues that the ALJ properly noted that Dr. Yaratha only cited to Plaintiff's subjective complaints. [*Id.* at 17-18]. The Commissioner submits that Dr. Yaratha relied on evidence from May 2013 indicating he was not a functional adult but argues that the ALJ properly noted that Dr. Yaratha had not considered a mental status exam by a clinical pharmacist only a few months before showing that Plaintiff had intact speech,

49

thought, attention, concentration, and memory.  [*Id.* at 18].  The Commissioner argues that the ALJ properly found that Dr. Yaratha did not analyze relatively contemporaneous records or discuss objective evidence demonstrating mental functioning.  [*Id.* at 18-19].

The Commissioner argues that the ALJ was not required to re-contact Dr. Yaratha, as doing so is within the ALJ's discretion and is only necessary when the ALJ is unable to make a disability conclusion.  [*Id.* at 20].  The Commissioner notes that the medical record was hundreds of pages and was sufficient for the ALJ to reach a determination and, in any event, Plaintiff's assertion that the additional information would have benefitted him is only speculation.  [*Id.*].

As to Plaintiff's second claim of error, the Commissioner argues that the ALJ properly evaluated the VA disability rating.  [*Id.* at 21-22].  The Commissioner further argues that, under relevant precedent, an ALJ is required to consider and discuss another agency's findings but is not bound by the other agency's decision or required to follow it.  [*Id.* at 22-23].  In other words, it is an exception to the general rule that an ALJ need not specifically refer to every piece of evidence and requires that the ALJ discuss the agency decision.  [*Id.* at 23].  The Commissioner argues that a reviewing court must consider whether an ALJ considered the other agency's decision and whether substantial evidence supports the ALJ's decision to

depart from that decision.  [*Id.*].  The Commissioner asserts that the ALJ's analysis meets these criteria, in that the ALJ considered the opinion but determined that the record evidence showed no more than moderate mental impairments.  [*Id.* at 24]. The Commissioner notes that the VA treatment notes showed improvement with treatment and significant daily activities.  [*Id.* at 24-25].

In reply, Plaintiff reiterates that the ALJ did not sufficiently evaluate the medical opinions of record.  [Doc. 19 at 2].  Plaintiff disputes the Commissioner's assertion that most of his mental status examinations were normal and argues that he usually presented with anxious mood, restlessness, and irritability, which support the opinions of Drs. Quinones, Welkovich, Raftery, and Yaratha.  [*Id.* at 3]. Plaintiff argues that the matter should be remanded because the ALJ was not diligent in weighing both the favorable and unfavorable findings.  [*Id.* at 4]. Plaintiff argues that the ALJ placed significant weight on a March 2013 mental status examination conducted by a pharmacologist, but pharmacologists are not acceptable medical sources under the regulations and there is no evidence this particular individual had training the treatment of mental health disorders.  [*Id.* at 4-5].

With regard to Dr. Yaratha, Plaintiff argues that although she did cite to some treatment notes from after Plaintiff's last date insured, she also cited to records

from before that date and, because she determined that Plaintiff had been disabled prior to the date last insured, he argues that the citations should not negatively affect her opinion. [*Id*. at 5]. Plaintiff also admits that Dr. Yaratha cited to the initial page of treatment notes but asserts that that does not mean that she failed to consider all of the other pages. [*Id*. at 5-6]. He also contends again that if the ALJ found Dr. Yaratha's opinion to be deficient he could have asked for further explanation. [*Id*. at 6-7]. Plaintiff argues that the ALJ made a determination during the administrative hearing that he was not disabled and sent post-hearing interrogatories to see if Dr. Yaratha would support that conclusion. [*Id.* at 7]. When she did not, Plaintiff argues, the ALJ simply chose not to follow-up. [*Id.*].

Finally, Plaintiff argues that the ALJ's reasons for rejected the treating and examining opinions were not supported by substantial evidence so the ALJ's first basis for giving little weight to his VA rating was erroneous. [*Id.* at 8]. He further argues it was error for the ALJ to reject the rating just because the VA follows a different adjudication process. [*Id.* at 8-9].

## VIII. <u>ANALYSIS</u>

After careful consideration of the parties' arguments, the ALJ's decision, and the evidence of record, the undersigned finds that the ALJ's decision is supported

by substantial evidence and was not based upon errors of law. *Doughty*, 245 F.3d at 1278 n.2; *Boyd*, 704 F.2d at 1209.

Plaintiff first argues that the reasons given by the ALJ for giving little weight to the opinions of Dr. Quinones, Welkovich, Raftery, and Yaratha were not supported by substantial evidence. [Doc. 15 at 2, 10-23]. The Commissioner argues to the contrary. [Doc. 17 at 6-20]. The Court first discusses the opinions of Dr. Quinones.[11] Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440. " '[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted). An ALJ must clearly articulate his reasons for discounting a treating physician's opinions. *Id.* at 1241. An ALJ's decision to discount a treating physician's opinion is reviewed for substantial evidence. *See Crawford v. Comm'r of Soc. Sec.*,

---

[11]    The Court notes that Plaintiff's brief is not entirely clear as to which of Dr. Quinones's opinions is being discussed. [*See* Doc. 15 at 11-15]. Plaintiff does not clearly differentiate among them and sometimes refers to her "opinion" and elsewhere refers to "opinions. [*Id.*]. Out of an abundance of caution, the Court discusses each of her opinions in turn.

363 F.3d 1155, 1159 (11th Cir. 2004); *Ybarra v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 538, 541 (11th Cir. Sept. 29, 2016).

With regard to the May and July 2011 opinions, [R638-39], the ALJ gave them little weight because she found they were unsupported by the psychiatrist's own treatment notes and inconsistent with other evidence of record, [R680].  In response, Plaintiff argues that the treatment notes in question show significant mental status abnormalities.  [Doc. 15 at 11-12].  Similarly, Plaintiff argues that not every status finding was abnormal, but that is not required, and that having good days and bad days is a feature of chronic mental health impairment.  [*Id.* at 12].

In the opinion, the ALJ noted that, among other things, after reporting for an initial psychological exam in March 2011, by April 2011 Plaintiff reported that his medications were helping him and that his memory was good.  [R414-15, 681].  Later in the month, on April 25, 2011, the ALJ noted that Plaintiff reported significant improvement with less mood irritability and better control of panic. [R406, 681]. The ALJ noted that in June 2011, when Plaintiff saw a VA social worker, he continued to report symptom relief and his mood was described as "bright."  [R464, 681].   The Court finds that the ALJ's decision to discount the opinions was supported by substantial evidence.  *Crawford*, 363 F.3d at 1159;

Case 1:20-cv-02868-AJB   Document 20   Filed 03/17/22   Page 55 of 70

*Ybarra*, 658 Fed. Appx. at 541.  A plaintiff's ability to point to contrary evidence in the record does not demonstrate than ALJ's finding is not supported by substantial evidence.  *Barron*, 924 F.2d at 230; *see also Crawford*, 363 F.3d at 1158-59 ("Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence").[12]  Plaintiff also argues that the ALJ is required to discuss obviously probative exhibits, [Doc. 19 at 4 (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11ᵗʰ Cir. 1981))], but then does not immediately identify the exhibits he believes are especially probative.

The ALJ next found that Dr. Quinones's opinion from March 2013 merited little weight.  [R682].  The ALJ noted that the opinion was conclusory, was not

---

[12]    Plaintiff additionally argues that having good days and bad days is a feature of chronic mental health impairment, [Doc. 15 at 12], and in support cites to the Eleventh Circuit's decision in *Schink v. Commissioner of Social Security*, 935 F.3d 1245, 1267-68 (11ᵗʰ Cir. 2019).    However, *Schink* was specifically addressed to the ALJ's finding that the plaintiff's impairment was non-severe.  *Id.* at 1268 ("[T]he ALJ's citation of the good days as evidence of no disability did not support a finding that Schink did not suffer from *a severe impairment*") (emphasis added).  However, the burden of proving that an impairment is severe is a light one and, in any event, is separate from the question under consideration.  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11ᵗʰ Cir. 1986) ("An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience").  The Court therefore finds Plaintiff's argument unconvincing.

based on direct observation, and was based on Plaintiff's unsubstantiated reports. [*Id.*].  Plaintiff does not appear to have directly addressed the ALJ's findings on this opinion.  [*See generally* Doc. 15].[13]  In any event, the Court finds that the ALJ's decision to discount the opinion was based on substantial evidence.  First, the Court agrees that the opinion, which totals two-sentences, is conclusory.  [*See* R637]; *see, e.g.*, *Simone v. Comm'r of Soc. Sec. Admin.*, 465 Fed. Appx. 905, 909-10 (11th Cir. Apr. 10, 2012) (holding that "good cause" exists to afford less weight to a treating physician's opinion if, among other reasons, it is conclusory).   The Court further notes the ALJ's finding that prior to the March 2013 statement Plaintiff was last seen at the VA clinic in November 2012 and was found to have no anxiety or depression and to feel like his life was finally on track.  [R547, 682].  The ALJ also noted that Plaintiff saw a pharmacologist in March 2013 who noted that Plaintiff was groomed and appropriately dressed, his mood was anxious, but his memory, attention, and concentration were intact.  [R535-36, 682].[14]  The Court therefore

---

[13]    Plaintiff's claims on this issue have therefore arguably been abandoned.  *See, e.g.*, *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (explaining that when a party fails to offer argument on an issue or makes only passing references to it, the brief is insufficient to raise a claim and the issue is abandoned).

[14]    In his reply brief, Plaintiff argues that the ALJ erroneously placed significant weight on this mental status examination because it was made by a

finds that the ALJ's decision to discount this opinion was supported by substantial evidence.

Finally, the ALJ gave little weight to Dr. Quinones's March and April 2014 opinions.  [R682-85].[15]    First, the ALJ noted that Dr. Quinones's appeared to have seen Plaintiff less often than indicated.  [R682-83].  Plaintiff does not appear to challenge this assertion.  [*See* Docs. 15, 19].  The ALJ then noted a variation in the GAF scores assigned to Plaintiff by Dr. Quinones, primarily in the context of assessing the accuracy of her statement.  [R683].  In this regard, the ALJ noted that Dr. Quinones assigned a score of 50, but had previously given a score as high as

_____

pharmacologist, who is not an acceptable medical source under the Social Security Regulations.  [Doc. 19 at 4-5].  First, it is not clear to the Court from a review of the opinion that the ALJ placed any specific weight on this evidence.  In any event, an ALJ is permitted to consider opinion evidence in the light of the medical record. *Simone*, 465 Fed. Appx. at 909-10 (noting that good cause exists for discounting an opinion if the opinion is contrary to the medical record).  Here, the mental status report in question was recorded the same day as Dr. Quinones's March 2013 opinion, making it unquestionably relevant in considering that opinion.  The Court finds Plaintiff's argument unpersuasive.

[15]    Notably, although the ALJ identified Dr. Quinones's March 2014 opinion, she does not separately discuss it.  [R680].  The Commissioner argues that the ALJ's analysis of the April 2014 opinion is applicable to both.  [Doc. 17 at 13, 13 n.1].  In this regard, the Court observes that Dr. Quinones's March and April 2014 opinions were issued only a few weeks apart, on March 13, 2014 and April 2, 2014, [R636, 643].  In any event, Plaintiff did not raise this discrepancy as an issue.  [*See generally* Docs. 15, 19].  The Court therefore does not address it.  *Sepulveda*, 401 F.3d at 1228 n.2.

53, and other providers had assigned a score of up to 59. [*Id.*]. Notably, Plaintiff does not deny that these variations exist, but instead argues that the variation within Dr. Quinones's own notes was minor and the GAF scale itself has been found to have a conceptual lack of clarity and questionable psychometrics. [Doc. 15 at 14-15]. The Court finds these arguments unconvincing. The ALJ stated explicitly that she mentioned the ALJ scores primarily in analyzing the consistency and was not relying on the substantive meaning of the score themselves. [R683]. In any event, even assuming that the variation on the GAF scores assigned by Dr. Quinones was minor, Plaintiff does not deny that there was greater variation between the scores found by Dr. Quinones and other providers. [*See* Doc. 15].

The ALJ noted that although Dr. Quinones found that Plaintiff suffered numerous adverse effects from his medication and therapy, he had only reported some sedation from his Clonazepam to her. [R683]. The ALJ also discussed that Dr. Quinones's opinion appeared to conflict with the findings of Dr. Westwell, who also saw Plaintiff during 2012 and 2013. [R684]. The ALJ stated that Dr. Westwell's notes generally showed that, while Plaintiff was reporting residual anxiety, he had better control of his symptoms and his mood was generally good with congruent effect. [R684]. For example, in October 2012, Plaintiff reported to Dr. Westwell that his anxiety was controlled, his mood was happier, and he was

more relaxed. [R550]. He further stated that he felt like his life was under control, he had more energy, and he was realizing his own self-worth. [*Id.*]. In November 2012, Plaintiff informed Dr. Westwell that he felt like his life was finally on track. [R547]. In response, Plaintiff points to other notes from Dr. Westwell that he argues make contrary findings. [*See* Doc. 15 at 12-13]. However, the ability of a Plaintiff to point to contrary findings is not determinative. *Barron*, 924 F.2d at 230; *Crawford*, 363 F.3d at 1158-59. In any event, the Court observes that the later findings Plaintiff points to at least partially support the ALJ's conclusion, in that they indicate that, after not coming in for treatment for some time, he was now motivated to receive treatment, he was not restless, had appropriate mood, coherent speech, logical content of thought, oriented to person, place, and time, adequate fund of knowledge, insight, and non-impaired judgment. [R618].

With regard to these opinions, the ALJ further pointed out that Plaintiff found part-time employment at the Base Exchange but apparently did not disclose or report it to his providers. [R681 n.19, *see also* R685]. Plaintiff argues that the record does not disclose that he lied and that the doctors may have simply elected not to have discussed his position in their notes. [Doc. 15 at 13-14]. While it is true that the record does not definitely indicate that Plaintiff lied about securing part-time employment, the Court is aware that the ability to function effectively in

a work setting is the type of information regularly noted by psychiatrists in their evaluation of patients. The Court finds that it was reasonable for the ALJ to infer, based on the fact that no provider mentioned Plaintiff having the position, even though it lasted for six months, that they were not informed about it. Alternatively, Plaintiff argues that the fact that he was only able to work in the position for six months supports his argument for disability. [Doc. 15 at 14]. However, having reasonably inferred that Plaintiff withheld knowledge of this employment from his providers, the ALJ was not required to guess as to how they would have evaluated the opinion if they had been informed about it. *See Carlisle v. Barnhart*, 392 F. Supp. 2d 1287, 1295 (N.D. Ala. 2005) (stating that ALJs are obligated not to succumb to the temptation to "play doctor") (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

In conclusion, the Court finds that the ALJ's decision to discount each of Dr. Quinones's opinions was supported by substantial evidence. *Crawford*, 363 F.3d at 1159; *Ybarra*, 658 Fed. Appx. at 541.

Next, Plaintiff argues that the ALJ wrongly assigned little weight to Dr. Welkovich's opinion. [Doc. 15 at 16-17]. The ALJ assigned the opinion little weight because it was not supported by Dr. Welkovich's own treatment notes and appeared to rely uncritically on Plaintiff's self-reported limitations and symptoms.

[R686].  The ALJ concluded that Dr. Welkovich's statement essentially mirrored Dr. Quinones' March 2014 statement.  [R685; *compare* R636, *with* R1067].  In reaching her determination, the ALJ pointed to a medical record from April 9, 2015, in which Plaintiff reported an increase in depression but a mental status exam indicated that he was cooperative, alert, depressed but with fluent speech, intact judgment and insight, and had a linear and goal directed thought process.  [R686, 1025].  Similarly, the ALJ pointed to a May 14, 2015 record in which Plaintiff was noted to be cooperative with appropriate behavior, anxious, but with full range and appropriate affect, fluent speech, linear and goal directed thought process, and intact judgment and insight.  [R686, 1018].  The ALJ further observed that there was no evidence that Dr. Welkovich had ever observed Plaintiff have a panic attack or any other extreme impairment caused by his anxiety or depression.  [R685].

In response, Plaintiff points to contrary records that the argues support his claim to disability.  [Doc. 15 at 16-17].  However, as stated previously, the existence of contrary evidence is insufficient to prove that the ALJ's opinion was not itself supported by substantial evidence.  *Barron*, 924 F.2d at 230; *Crawford*, 363 F.3d at 1158-59.  Plaintiff also takes issue again with the ALJ's finding with regard to his failing to disclose his part-time position.  [Doc. 15 at 17].  The Court finds that argument unconvincing for the reasons stated above and that the ALJ's

decision was supported by substantial evidence. *Crawford*, 363 F.3d at 1159; *Ybarra*, 658 Fed. Appx. at 541.

Next, Plaintiff objects to the ALJ's treatment of Dr. Raftery's opinions. [Doc. 15 at 18-19]. Generally, treating physician's opinions are entitled to more weight than non-treating physicians. *Stinson v. Kijakazi*, No. 3:20-CV-317-SMD, 2021 WL 4498636, at *4 (M.D. Ala. Oct. 1, 2021). An ALJ may discount the opinion of an examining, but non-treating, physician for good cause. *Id.* at *5. Good cause exists when an opinion is (1) conclusory or inconsistent with his own records, (2) not supported by the evidence, or (3) the evidence supports a contrary finding. *Id.*

The ALJ gave Dr. Raftery's opinion limited weight, pointing out that Dr. Raftery only examined Plaintiff on one occasion, his objective findings included irrelevant details such as circumstantial speech, and that Dr. Raftery himself noted that Plaintiff appeared to be a questionable historian and was likely reporting more problems than exited in reality. [R688]. The Court finds no error in the ALJ's decision. An ALJ is permitted to consider how often a source has seen a plaintiff in determining the weight to give to the source's opinion. *See, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because [the provider] examined [the plaintiff] on only one occasion, her opinion was not entitled to great

weight"); *Stinson*, 2021 WL 4498636, at *4. In addition, although Dr. Raftery determined that the testing appeared valid, he also noted that Plaintiff was likely reporting more problems than actually existed and noted that he was a questionable historian of his condition. [R496-98]. The Court finds that when a provider repeatedly raises the issue of whether the plaintiff is a valid historian of his condition, an ALJ may properly consider that fact in weighing the provider's opinion.

In response, Plaintiff admits that Dr. Raftery only examined Plaintiff once, but argues that his findings were similar to those of Drs. Quinones and Welkovich, which provides it with additional support. [Doc. 15 at 18-19]. However, the Court has found that the ALJ properly discounted the opinions of Drs. Quinones and Welkovich for the reasons stated above. Plaintiff additionally argues that the ALJ wrongly asserted there were significant inconsistencies in how he described his education and employment history when speaking to Dr. Raftery. [*Id.* at 19-20]. In support of her conclusions, the ALJ noted that Plaintiff reported in some places that he had a Master's degree in electro mechanical engineering and an advanced engineering degree and elsewhere that he had only a high school education and job training. [R666 n.5]. A review of the record indicates that in a psychosocial assessment on April 6, 2011, Plaintiff did indicate that he had a "Master's Degree

in Electro-Mechanical Engineering." [R417]. In contrast, in his disability report, Plaintiff indicates that he had completed one year of college. [R266]. The Court finds no error in the ALJ considering this discrepancy.

In response, Plaintiff notes that Dr. Quinones also recorded that he had a post-graduate degree but argues that she apparently confused his technical diploma with an advanced degree. [Doc. 15 at 19-20; *see also* R430]. Given that Plaintiff indicated that he had an advanced degree in at least two places, however, the Court finds this argument unconvincing. Plaintiff also takes issue with a statement by the ALJ that "there appeared to be questions" surrounding his qualifications to work at General Electric and a defense contractor. [Doc. 15 at 20; R689]. He argues that his earnings records show that he did work for both General Electric and Northrop Grumman. [Doc. 15 at 20; *see also* R237, 239]. However, the ALJ only noted an apparent inconsistency and it is unclear from the opinion how much weight was assigned to it. In any event, other issues with Plaintiff's work history are evident from the record. For instance, during the second administrative hearing, Plaintiff claimed he lost every job he had held because of psychological issues. [R714]. However, he previously informed Dr. Quinones that he had been terminated from his previous positions due to financial reasons. [R430]. For all these reasons, the Court finds that substantial evidence supports the ALJ's decision to give

Dr. Raftery's opinion limited weight.

Plaintiff next challenges the weight given to Dr. Yaratha's opinion. [Doc. 15 at 21-22].[16] The ALJ, who requested that a medical expert review Plaintiff's file and provide written interrogatory responses, assigned Dr. Yaratha's opinion little weight because it was based in part on evidence in the record after Plaintiff's date last insured, it was based on Dr. Quinones's opinion, which has been discounted, and provided no analysis of the record as a whole. [R687-88]. The ALJ also noted that Dr. Yaratha appeared to cite to the first pages of notes in the record, which detailed Plaintiff's description of his condition, and so relies almost exclusively on Plaintiff's subjective reports and not objective findings. [*Id.*].

In response, Plaintiff argues that the ALJ's analysis was overly literal and the fact that Dr. Yaratha cited to the first page of a treatment note does not mean that she did not consider the other pages. [Doc. 15 at 22; Doc. 19 at 5]. However, the form completed by Dr. Yaratha states to "[c]ite the objective medical evidence that supports your opinion, with specific references (exhibit and page number) to

---

[16]     Notably, Dr. Yaratha also opined that Plaintiff met several listings, including Listings 12.04 and 12.06. [R1202]. The ALJ, on the other hand, determined that Plaintiff had not met or equaled any listing. [R658-61]. Because Plaintiff has not explicitly challenged that finding on appeal, [*see* Doc. 15], the Court finds that issue has been abandoned, *Sepulveda*, 401 F.3d at 1228 n.2.

the evidence we provided from the case record." [R1202]. Given that the document itself requests the specific page numbers relied upon, the Court finds Plaintiff's argument unconvincing.

Next, Plaintiff argues that, if the ALJ believed Dr. Yaratha had not provided a sufficient explanation for his opinion, the ALJ could have contacted the doctor for further consideration. [Doc. 15 at 22-23; Doc. 19 at 6]. Plaintiff argues that the ALJ made up her mind during the administrative hearing that he was not disabled and, when Dr. Yaratha's opinion did not support that conclusion, declined to request a clarification regarding the basis of the opinion. [Doc. 19 at 7].

It is well established that the ALJ has a basic duty to develop a full and fair record. 20 C.F.R. § 416.912(b) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). However, re-contacting a provider is only necessary when the available evidence is insufficient to make a determination as to disability. *See Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir. June 17, 2005). In addition, regardless of an ALJ's duty to fully develop the record, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence to in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003);

66

*see also* SSR 17-4p (noting that a claimant has the primary responsibility to submit evidence related to his disability claim).

The Court finds that the ALJ did not err in choosing not to re-contact Dr. Yaratha regarding his opinion.  The record before the ALJ was substantial, [*see* R1-1206], and the ALJ provided a thorough explanation for her decision, [*see* R652-92].  There is no indication that this material was insufficient to make a determination as to disability. *Johnson*, 138 Fed. Appx. at 189.  Plaintiff has not identified any evidentiary gaps in the record.  [*See* Doc. 15]; *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995).   The Court therefore finds Plaintiff's argument unconvincing and his assertion that the ALJ had predetermined the outcome of his case to be unfounded.  Finally, Plaintiff admits that Dr. Yaratha considered records dated after his date last insured but argues that the ALJ erred in discounting Dr. Yaratha's opinion on these grounds because he received no instructions limiting the timeframe he was asked to consider.  [Doc. 19 at 5].  However, the ALJ was tasked with weighing the opinion provided and doing so required a consideration of any erroneous material relied upon, regardless of the basis for the error.

In his second claim of error, Plaintiff argues that the ALJ did not provide a sufficient justification for rejecting Plaintiff's 100% disability rating from the VA.

[Doc. 15 at 23-25]. In evaluating the Plaintiff's VA disability rating, the ALJ noted the 100% rating and stated that it was not a medical opinion and that she was required to consider all the underlying medical evidence and opinions when assessing a VA disability rating. [R689]. The ALJ pointed out that she was required to consider the evidence of record, not only Plaintiff's subjective complaints, and also that she had already evaluated the medical opinions of the VA mental health treating sources and found they were not entitled to weight in a Social Security analysis because of their lack of supportability and inconsistency with the underlying medical evidence. [*Id.*]. Finally, the ALJ noted that the VA and Social Security systems differed in terms of the meaning of a disability percentage and whether they considered the effect of a hypothetical individual's ability to earn income without regard to age and other factors or provided an individualized assessment focused on an individual's capacity to find work in the national economy. [R689-90].

In determining whether an ALJ who declined to follow another agency's decision regarding disability still properly considered that decision, district courts are required to consider two questions. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020). The Court must first ask whether the ALJ considered the other agency's opinion. *Id.* Second, a court must determine whether

substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision.   *Id.*   Here, the Court answers both questions in the affirmative.   The ALJ explicitly considered the VA's rating.   [*See* R689-90]. Substantial evidence also supported the ALJ's decision to depart from the VA's decision.   In particular, in reaching her decision, the ALJ reviewed the record from the administrative hearing, [R662-65], the medical record, [R665-77], opinion evidence, [R677-689], testimony from the VE, [R691-92], Plaintiff's own function report, [R660, 671], and several function reports from his mother, [R690].   In considering this material, the ALJ determined that Plaintiff's the symptoms caused by Plaintiff's medical determinable impairments were not as limiting as he alleged and that he was able to make the transition to work that existed in significant numbers in the national economy.   [R662, 692].

Plaintiff argues that the ALJ erred in rejecting the VA rating, first, because the ALJ's reasons for giving little weight to the medical opinions in the file were not supported by substantial evidence.   [Doc. 15 at 24; Doc. 19 at 8].   However, the Court has rejected that argument for the reasons above.   Next, Plaintiff argues that it was error for the ALJ to reject his VA disability rating solely because the VA does not follow the same adjudication process as the Social Security Administration.   [Doc. 15 at 24-25; Doc. 19 at 8-9].   However, the ALJ properly

found, applying the standards required in Social Security proceedings, that the opinions underlying the VA rating were entitled to different weight, and so did not only rely on the differences between VA and SSA evaluations.  The Court therefore finds Plaintiff's argument unpersuasive.

## IX.   CONCLUSION

In conclusion, the Court **AFFIRMS** the final decision of the Commissioner.

The Clerk is **DIRECTED** to enter final judgment in favor of Defendant.

**IT IS SO ORDERED and DIRECTED**, this 17th day of March, 2022.


ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

70